IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1999 SESSION


**FILED**

October 13, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 01C01-9809-CR-00361 |
| Appellee, | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Honorable J. Randall Wyatt, Judge |
| HAROLD LYNN WOODROOF, | ) | |
| | ) | (Sentencing) |
| Appellant. | ) | |

FOR THE Defendant:

JOHN E. HERBISON
2016 Eighth Avenue South
Nashville, TN  37204

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

MARK E. DAVIDSON
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

VICTOR S. JOHNSON, III
District Attorney General

DIANE S. LANCE
Assistant District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN  37201-1649

OPINION FILED: _____

AFFIRMED

ALAN E. GLENN, JUDGE

# O P I N I O N

The defendant, Harold Lynn Woodroof, appeals as of right his sentence of twenty-six years upon guilty pleas to four counts of aggravated sexual battery and two counts of sexual battery in Davidson County Criminal Court. According to the defendant's plea agreement with the State, the sentence for each of the aggravated sexual battery counts was eight years and the sentence for each of the sexual battery counts was two years. Defendant argues that no evidence supports the consecutive sentences imposed by the trial court. Based upon our review of the record and of applicable law, we affirm the trial court.

## PROCEDURAL BACKGROUND

The defendant was charged with four counts of sexual battery, twelve counts of aggravated sexual battery, and one count of rape of a child. The rape charge was dismissed with prejudice; two sexual battery charges were nolle prossed; and eight aggravated sexual battery charges were also nolle prossed. The State and the defendant agreed to two-year sentences on the two counts of sexual battery to which the defendant pleaded guilty, and to eight-year sentences on the four aggravated sexual battery charges to which the defendant pleaded guilty. The charges to which the defendant pleaded guilty stemmed from acts committed in the month of July 1997. A sentencing hearing was held on July 31, 1998 for the trial court to determine whether the counts would be run concurrently or consecutively. At the conclusion of the hearing, the trial court ordered the two sexual battery charges to be served concurrently as to each other and consecutively as to the aggravated sexual battery charges. The trial court ordered two of the aggravated sexual battery charges to run concurrently as to each other and consecutively to the remaining two aggravated sexual battery charges for an effective sentence of twenty-six years. As a Range I offender, the defendant would serve at least thirty percent of the concurrent sexual battery sentence of two years before being eligible for release. The remaining twenty-four years for aggravated sexual battery would be served without any eligibility for release, that is, one hundred percent of the sentence would be served. Notice of appeal was timely filed.

2

**STATEMENT OF FACTS**

During the time of the crimes to which defendant pleaded guilty, he was a 33-year-old forklift operator living with his mother and was the divorced father of a daughter, K. W.,[1] age 7.  K. W. lived in Florida with her mother who had custody.  For a period of weeks during the summer of 1997, K. W. came to Nashville to spend vacation time with her father.  Defendant became the adult planner of activities to a lake and a pool for his visiting daughter and five other young girls.  Two of the girls included in the group, T. T., age 14, and C. C., age 9, were the daughters of a lifelong friend of defendant's in the neighborhood and knew the defendant well.  Two other sisters in the group, R. L., age 11, and A. L., age 10, were next-door-neighbors, and so they also knew the defendant.  Their mother described the situation in the following way: "Well, his little girl was there for the summer.  And I think he was, you know, kind of wanting to take her and do things with her.  And she kind of got to know my girls.  And they become friends.  And so they all wanted to go together.  I wasn't invited on many of those outings."  The last member of the group, J. Z., age 14, came along as a friend of T. T.'s.  Therefore, the girls were ages 7, 9, 10, 11, and 14 (two girls).

Beginning in August of 1997, the defendant apparently assumed specific responsibility for T. T. and C. C. while their mother devoted most of her time to her terminally ill, hospitalized mother.  The presentence report indicates that late on the evening of August 11, 1997, when their mother had returned from the hospital, T. T. came into her bedroom and told her that C. C. was crying because "Harold had been messing with her."  Gradually, their mother learned that both her daughters had been fondled by the defendant.  The next day, their mother filed a complaint.  The case was assigned to Detective David Imhof of the Metro Police Department, Youth Services Division.  After interviewing T. T. at Glendiff High School, the names of the other victims identified by T. T. were added to the investigation.

On September 9, 1997, following the investigation that included interviews with the

---

[1]It is the policy of this court not to use the names of minor victims of sexual offenses.

victims, Detective Imhof interviewed the defendant at his home. The defendant gave a full statement concerning his actions with the victims, which he described, according to Detective Imhof's report, as being "sexually aroused when giving the girls a back rub." The record shows a range of touching from ambiguous tickling and tossing in the water and hugging to clearly sexual rubbing on backs, buttocks, vaginas, legs, and breasts. The victims often sat in the defendant's lap for the back rubs and could feel his erection in their backs through clothing. Detective Imhof reported that the defendant stated "that he has always been a sensual person, and likes to give back rubs and relax females. He admitted that his touching of the victims in a sexual manner was wrong, and admitted that what he did to all the victims was wrong." Although none of the victims testified at the sentencing hearing, three of the girls' mothers testified and letters from R. L. and T. T. were read into the record. R. L. wrote of her feelings of being "violated and controlled." She closed her letter, "It is really hard to get over this. All I want to say is you have ruined my life." T. T wrote, "We thought you were cool at first because you gave us this and that and let us do stuff that our parents wouldn't, but we should have seen through your sick scheme. I never want to see you and hope I never have to again. You have ruined us completely."

The record shows that the trial court considered the application of Tennessee Code Annotated § 40-35-115(b)(5) to the defendant. This subsection applied to the defendant because he had been "convicted or two (2) or more statutory offenses involving sexual abuse of a minor." The trial court then turned to each of the "aggravating circumstance" that would support, by a preponderance of the evidence, the discretionary application of consecutive sentences. First, the court found that "the defendant has clearly violated a position of trust with all these people." The court characterized this as a "violation of private trust between a father and a daughter, between a father and a daughter's friends, between little neighborhood children." The court also considered the time span and found that the span was limited to the summer of 1997 but that this span of time was significant in the "[t]he summer of a young child, ten or twelve years old is a long period of time." While there was some evidence of earlier sexual abuse of his daughter, the circumstances were vague and the period of time the court considered was approximately thirty days in July of 1997. The nature and scope of the sexual acts was found to be "totally

4

inappropriate and wrong." Finally, the trial court looked to the "extent of the residual, physical and mental damage to the victim or victims." The trial court noted the need for counseling as a means of dealing with the seriousness of the mental and emotional harm. The trial court stated, "I think, clearly, in this case, that these young women, hopefully, are going to be able to deal with this through counseling, get some help. . . . You just happened to meet a man who is mentally mixed up and totally inappropriate and wrong in what he did." The trial court continued with the sentencing, concluding that "[i]t's an aggregate sentence of 26 years, as a Range I offender." The trial court stated that: "I do think, based on my understanding of the law, based on the testimony of all of these witnesses that we've heard here today, that Section 40-35-115, subsection (b)(5) does apply to a number of these cases, and that consecutive sentences are appropriate."

**ANALYSIS**

**I. LEGAL AUTHORITY**

When a defendant challenges the length, range, or manner of service of a sentence, as has the defendant here, this court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d); see also State v. Anderson, 880 S.W.2d 720, 727 (Tenn. Crim. App. 1994). That presumption is conditioned on an affirmative showing in the record that the trial court did in fact consider sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W. 2d 166, 169 (Tenn. 1991) (finding that the "presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances"). Where the presumption holds, the burden is on the defendant to show that the sentence is inappropriate. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments. When our review supports a conclusion that the trial court imposed a lawful sentence, "then we may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

Tennessee Code Annotated § 40-35-115 sets out criteria to guide the trial court

5

when dealing with a defendant convicted of multiple offenses. The intent of the legislature "is to be ascertained primarily from the natural and ordinary meaning of the language used." Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997). The legislature, cognizant of the public issues of prison crowding and high costs of construction,[2] used two different terms, one mandatory and one optional, when setting forth the guidelines for sentencing a defendant with multiple convictions. The statute makes it clear that the ordinary and usual sentence will be concurrent: "Sentences *shall* be ordered to run concurrently, if the criteria noted previously in this section are not met, unless consecutive sentences are specifically required by statute or the Tennessee Rules of Criminal Procedure." Tenn. Code Ann. § 40-35-115(d) (emphasis added). The ordering of consecutive sentences, on the other hand, is purely discretionary:

> (b)  The court *may* order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> (1)  The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2)  The defendant is an offender whose record of criminal activity is extensive;
>
> (3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6)  The defendant is sentenced for an offense committed while on probation; or
>
> (7)  The defendant is sentenced for criminal contempt.

---

[2]See Tenn. Code Ann. § 40-35-102(5) (recognizing "that state prison capacities and the funds to build and maintain them are limited").

Id. (b)(1)-(7) (emphasis added). This statute represents the codification of two opinions of our Supreme Court: Gray v. State, 538 S.W.2d 391 (Tenn. 1976) and State v. Taylor, 739 S.W.2d 227 (Tenn. 1987). Subsection (5) comes directly from Taylor. In that case, a father was convicted on two counts of aggravated rape and sentenced to serve consecutive twenty-four year sentences. The father in Taylor was shown to have had sexual intercourse with his daughter beginning at age 4 and continuing until she told her mother at age 7. While affirming the sentence of the trial court, our Supreme Court cautioned that "consecutive sentences should not routinely be imposed in sexual abuse cases, or in other cases, and that the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Taylor, 739 S.W.2d at 230.

## II. APPLICATION

Defendant argues that the evidence does not support the imposition of consecutive sentences by the trial court. Because the record shows that the trial court did affirmatively consider the criteria for imposing consecutive sentences as set forth in Tennessee Code Annotated § 40-35-115(5), we review this appeal with a presumption that the determinations made by the trial court are correct.

Tennessee Code Annotated § 40-35-115(5) sets out four aggravating circumstances for the trial court to consider in determining whether to impose consecutive sentences: (1) the relationship between the defendant and victim or victims; (2) the time span of defendant's undetected sexual activity; (3) the nature and scope of the sexual acts; and (4) the extent of the residual, physical and mental damage to the victim or victims. We examine each factor in order.

### A. Relationship

The record showed that the defendant was a trusted, familiar, family friend and neighborhood figure. The mother of T. T. and C. C. testified that her children looked upon the defendant as a father. He was often in their home as a favorite friend of their mother's. Defendant was also a father himself, and K. W. was completely in his care during her

7

summer visits to Nashville. Defendant also engineered a special role for himself as the planner of outings for this group of six young girls during the summer. His position was like that of a babysitter but, as a parent of one of the members of the group, his relationship carried more authority and was thus more readily abused. He gained the trust of the other parents either by offering to help out during a family crisis or by seeming to want only to entertain his visiting daughter. He used his status as an adult to provide at least two of the girls with beer and cigarettes. The trial court found that the defendant had, "clearly violated a position of trust with all these people." The evidence supports this finding.

## B. Time Span

There is some lack of certainty in the record as to when the abuse actually started and ended. Defendant testified that the sexual fondling began after July 4, 1997 and lasted for approximately three weeks. Yet, as late as August 11, 1997, C. C. was crying about the acts of the defendant. The trial court noted that:

> primarily what we're talking about is the Summer of '97, although there is implied other things more than that, but I'm not going to consider all that. I'm considering the summer-- and I agree with Ms. Lance on that point. The summer of a young child, ten or twelve years old, is a long period of time.

The trial court appropriately found the time span of undetected sexual activity an aggravating circumstance.

## C. Nature and Scope of the Sexual Acts

The trial court found the acts of the defendant to be "totally inexcusable, not to mention disgusting." In her argument, General Lance acknowledged that this touching was not "the worst of the worst." She noted, "We don't have a man jumping out behind a bush and grabbing these children. We don't have all the horrible things that--that we see in these cases, that we've heard in this courtroom." But General Lance emphasized that these were significant touchings on several parts of the body and that the children were exposed to erections. In this case, back rubbing became inappropriate sexual touching when the defendant used the opportunity to rub the backs of the children as a means of sexual gratification and arousal. The record shows that the defendant did not limit his

rubbing to the back area only but to other intimate parts of the bodies of the children. While some touching may occur in the course of swimming and "horse-play" in the water, this defendant clearly intended that his contact with these children be for the purpose of his own sexual gratification.

We find the issue of the scope of the sexual acts, in the sense of the space or opportunity for free and unhampered activity, most damaging to defendant's claim that consecutive sentencing is unsupported by the evidence in regards to his daughter. Here, the defendant had free opportunity to engage in fondling and rubbing as a means of sexual gratification. K. W., unlike the other children, did not go home in the evening. K. W. was in the exclusive care of her father. Although the evidence is questionable as to the extent of the defendant's touching of his daughter, we agree that to touch the vagina of his daughter is "significant to the regular, normal person out there in the community." The trial court appropriately found the nature and scope of sexual activity to be an aggravating circumstance.

### D. Extent of Residual, Physical, and Mental Damage

The testimony of three of the victims' mothers provides the primary basis for evaluating the extent of residual, physical, and mental damage to the victims. Letters from each of the mothers, as well as letters from R. L. and T. T., are included in the record. While there is no evidence of physical harm to the victims, the trial court heard extensive evidence dealing with mental and emotional damage. The mother of C. C. testified that her daughter reacted by crying and screaming and saying, "Mommy, I want you to kill him" when she saw the defendant on television. She also testified that C. C. was afraid to go out in the neighborhood and that T. T. had decided to live with her father rather than stay in the neighborhood. Their mother also noted that while T. T. did not require any counseling, C. C. did require counseling. The mother of A. L. and R. L. testified to outbursts of anger, eating problems, and fear of their own father.

K. W. 's mother read her letter to the trial court. Her letter stated that "K. cries a lot

9

and is always scared of her father, because in the last summer of seeing her father, she was so glad when I came and picked her up. She didn't even want to say good bye to her father." K. W.'s mother also wrote of her daughter's nightmares and of the years she felt it would take for her to heal and to understand what her father had done. Where K. W. is concerned, the harm to her involves coming to terms with a father who would harm her when he should only care for and protect her. The evidence shows that aggravating circumstances existed as to residual mental damage.

## CONCLUSION

We find that the trial court appropriately found, by a preponderance of the evidence, that each of the four aggravating criteria required by statue was fully met. Therefore, we affirm the sentence imposed by the trial court.


_____
ALAN E. GLENN, JUDGE


CONCUR:



_____
JOSEPH M. TIPTON, JUDGE



_____
JOE G. RILEY, JUDGE